## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO:  2:24-cv-04597-DCN |
| HIDALGO DRYWALL, LLC, a dissolved South Carolina Limited liability company; HISTORIC CHARLESTON, LLC, a South Carolina limited liability company, and SEARS CONTRACT, INC., a South Carolina corporation, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY ("Atain"), files this Complaint for Declaratory Judgment against the Defendants, HIDALGO DRYWALL, LLC ("Hidalgo"), HISTORIC CHARLESTON, LLC ("Historic Charleston"), and SEARS CONTRACT, INC. ("Sears") and in support, states:

## NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. § 2201 (2024) and FED. R. CIV. P. 57 (2024) to establish the absence of coverage under a Commercial General Liability ("CGL") insurance policy issued to Hidalgo, for a lawsuit filed against Hidalgo by Historic Charleston and cross-claim filed by

Sears, and arising out of alleged construction defects lawsuit brought by Historic

Charleston (the "Historic Charleston Lawsuit").

## JURISDICTION AND VENUE

2.    Jurisdiction is proper because there is diversity of citizenship and the

amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and

costs.

3.    Venue is proper in this district because the events giving rise to the

claim occurred here. 28 U.S.C. § 1391(a)(2) (2024). More specifically, this is the

district where the underlying action is venued, and where the insured risk lies.

At least one of the Defendants is domiciled in this district.

4.    All conditions precedent have occurred, have been performed, or

have been waived.

## THE PARTIES

5.    The Plaintiff, Atain, is a Michigan corporation with its principal place

of business in Michigan. Atain is a surplus lines insurance company under S.C.

Code § 38-45-10, *et seq*. and issued a Commercial General Liability ("CGL") Policy

to Hidalgo.

6.    The Defendant, Hidalgo is a dissolved South Carolina limited liability

company, which at the time of the events of the underlying lawsuit, had its

principal place of business in North Charleston, South Carolina. Hidalgo's sole

member and manager was Antonio Aguilar, who is a citizen of, or is otherwise

domiciled in South Carolina, and no members of Hidalgo are citizens of Michigan. Hidalgo was named as a defendant in the Historic Charleston Lawsuit, and as a cross-claim defendant of Sears, which was filed in Charleston County, South Carolina. Hidalgo is the sole named insured on the Policy issued by Atain.

7.    The Defendant, Historic Charleston, is a South Carolina limited liability company with its principal place of business in Charleston, South Carolina. Historic Charleston's sole member and manager, Hasmukh Patel, is a citizen of South Carolina, and none of Historic Charleston's members are citizens of Michigan. Historic Charleston is the plaintiff that initiated the Historic Charleston Lawsuit and who has filed third-party claims against Hidalgo.

8.    The Defendant, Sears, is a North Carolina corporation with its principal place of business in North Carolina. Sears is also a named defendant in the Historic Charleston Lawsuit, and has filed a cross-claim against Hidalgo.

<u>**COMMON ALLEGATIONS**</u>

9.    *THE HISTORIC CHARLESTON LAWSUIT***:** Historic Charleston initially filed a lawsuit in the Charleston County Court of Common Pleas, Case No. 2022-CP-10-01670, against Sears and others due alleged defects in the construction of the subject property (the "Property"). Sears filed a third-party complaint against Hidalgo arising out of the Historic Charleston Lawsuit. Historic Charleston subsequently amended its complaint to bring direct claims against

Hidalgo and others. A copy of the current operative pleading in the Historic Charleston Lawsuit is attached as Exhibit "A" and is hereinafter referred to as the "Historic Charleston Complaint" or "Historic Charleston Lawsuit."

10.    Historic Charleston alleges that on or around June 22, 2015, it entered into a binding and enforceable Cost Plus Contract with Guaranteed Maximum Price ("Agreement") with BL Harbert International, LLC ("BL Harbert") for the construction of a hotel in historic downtown Charleston, South Carolina (hereinafter "Project"). (Ex A, ¶ 3).

11.    Historic Charleston alleges that BL Harbert served as the general contractor for the construction of the Project and agreed to construct the Project in accordance with the Agreement, the applicable contract documents prepared by RBA Group, Inc. ("RBA"), and all applicable building codes, industry standards, shop drawings and manufacturers' instructions. (Ex. A, ¶ 10).

12.    Historic Charleston alleges that BL Harbert, through the use of subcontractors, constructed the Project with a Certificate of Occupancy being issued on or about November 6, 2017. (Ex. A, ¶ 15).

13.    Historic Charleston alleges that Sears installed the metal framing, insulation, and drywall at the Project as a subcontractor to BL Harbert. Sears was identified by Historic Charleston as one of several "Subcontractor Defendants." (Ex. A, ¶¶ 22, 42).

- 4 -

14.     Historic Charleston also alleges that Hidalgo installed the metal framing, insulation, and drywall at the Project as a subcontractor to Sears. Hidalgo has been identified as one of several "Subcontractor Defendants." (Ex. A, ¶¶ 26, 42).

15.     Historic Charleston alleges that at the time the Certificate of Occupancy was issued, the Project contained latent defects. These latent defects have resulted in air and moisture intrusion throughout the building envelope of the Project as well as other damages stated herein. (Ex. A, ¶ 43).

16.     Historic Charleston, LLC alleges that the damage to the Project is a direct and proximate result of the defects and deficiencies in the construction and attempted repairs performed by BL Harbert and its subcontractors. (Ex. A, ¶ 48).

17.     Historic Charleston, LLC alleges that various components of the Project, including those listed above are not in compliance with the building codes and standards which were applicable at the time of the design and construction of the Project and must be replaced or remedied to comply with current building codes and standards applicable to the Project. Historic Charleston alleges that the Project has been and will continue to be proximately damaged by the construction defects existing at the Project. (Ex. A, ¶¶ 49-50).

18.     Historic Charleston also alleges that the latent construction defects caused substantial consequential and resulting damage to various non-defective

components of the Project in the form of air infiltration, excessive condensation and water damage, corrosion of framing members, damage to insulation, drywall, building components, trim, interior flooring, wall coverings, furnishings, and other non-defective elements of the Project. (Ex. A, ¶ 51).

19.    Furthermore, Historic Charleston alleges that the construction deficiencies caused occurrences in the form of leaks, defects, and failures within the building envelope which are not readily apparent to one examining the exterior surface thereof. Historic Charleston further alleges that the latent design and construction defects resulted in continual exposure to the same generally harmful conditions over time in the form of repeated injurious events that occurred each and every year since construction and constitute "occurrences" and compensable damage. (Ex. A, ¶ 52).

20.    The latent construction defects resulted in repeated air infiltration and water intrusion into the Project, failure of the components of the exterior envelope, and other consequential damages. (Ex. A, ¶ 52).

21.    Further, the alleged negligence of BL Harbert and its subcontractors resulted in damage to the work of the other contractors, subcontractors and trades and in damage to the Project, Historic Charleston's property, and Historic Charleston's use and enjoyment of the Project. (Ex. A, ¶ 52).

22.     Historic Charleston alleges that as a direct and proximate result of the numerous failures referenced above, it sustained direct and consequential damages including, but not limited to (i) payment of professional fees to investigate the full extent of the construction deficiencies; (ii) costs to temporarily repair BL Harbert's defective construction in an effort to mitigate damages; (iii) costs to permanently repair the Project, including professional fees to design remediation plans and specifications to correct the construction deficiencies referenced herein; (iv) legal fees and costs occasioned by this action; and (v) considerable costs for lost income or loss of use or services occasioned by the defective work, which will continue during the time construction repairs are undertaken. Historic Charleston also seeks punitive damages. (Ex. A, ¶¶ 53, 54).

23.     Historic Charleston asserts the following causes of action against the Subcontractor Defendants, respectively: Negligence/Gross Negligence Against the Subcontractor Defendants (Count V); and Breach of Implied Warranties Against the Subcontractor Defendants (Count VI). (Ex. A, ¶¶ 87-101).

24.     ***THE SEARS THIRD-PARTY CLAIM/CROSS-CLAIM:*** In response to Historic Charleston's complaint, Sears filed a third-party complaint against Hidalgo and others. With the joinder of Hidalgo as a Defendant by Historic Charleston, Sears's third-party claim became a cross-claim. The current operative pleading by Sears against Hidalgo is attached as Exhibit "B."

25.     The pertinent allegations of Count I of the third-party complaint are as follows. Sears Contract alleges that Hidalgo entered into a subcontractor agreement (hereinafter "Agreement") with Sears Contract to serve as a subcontractor for Sears Contract's work at the subject property. Sears Contract also alleges that as a part of the Agreement, Hidalgo agreed to indemnify Sears Contract. Sears Contract alleges that Historic Charleston has alleged that it has suffered damages as a result of defects and deficiencies related to the construction of the subject property. Sears Contract further alleges it is without negligence or fault in this matter and expressly denies any and all liability. Sears Contract alleges that in the event that it is held liable to Historic Charleston in any respect, any such liability arose out of the wrongful acts, omissions, negligence, or representations of Hidalgo, and therefore, Sears Contract is entitled to be indemnified and held harmless by Hidalgo for any amount for which it may be held liable to Historic Charleston and for any and all fees and costs, including attorneys' fees, incurred as a result of the Historic Charleston Lawsuit. (Ex. B, ¶¶ 43-47).

26.     With respect to Count III, Sears Contract alleges that Hidalgo agreed to furnish labor, services, materials, installation, supplies, equipment, and other resources necessary to install drywall, metal studs, and other related appurtenances, and such other installations or components as may be alleged by Historic Charleston or others, and construct the subject property in compliance

with the applicable industry standards, manufacturer specifications, and building codes. (Ex. B, ¶ 54).

27.     Sears Contract alleges that if the allegations made by Historic Charleston are proven true, Hidalgo breached its contract in that it failed to properly construct the subject property and its components as complained of in the Historic Charleston Lawsuit. Sears Contract alleges that the damages, if any, to the subject property are the direct and proximate result of Hidalgo's breach of contract which has caused and will continue to cause Sears Contract to suffer substantial damages. Sears Contract alleges that as a result of these breaches of contract, Sears Contract has and will continue to incur damages, including but not limited to any monies it is adjudged to owe Historic Charleston or which it pays Historic Charleston in settlement of Historic Charleston's claims, attorneys' fees and costs, expenses, and any other payments or expenses incurred as a result of defending this action. Sears Contract alleges it is therefore entitled to recover all damages it incurs a result of Hidalgo's breach of contract. (Ex. B, ¶¶ 55-58).

28.     With respect to its breach of warranty claims, Sears Contract alleges that Hidalgo expressly or impliedly warranted to Sears Contract that all work performed by Hidalgo would be performed in a careful, diligent, and workmanlike manner, and that any materials or services designed, supplied, or provided by it would be fit for their intended or specific purpose. Sears Contract

alleges that if the allegations contained within Historic Charleston's Complaint are proven true, Hidalgo breached these warranties. Sears Contract alleges that as a result of these breaches of warranty, Sears Contract has and will continue to incur damages, including but not limited to any monies it is adjudged to owe Historic Charleston or which it pays Historic Charleston in settlement of its claims, attorneys' fees and costs, expenses, and any other payments or expenses incurred as a result of defending this action. (Ex. B, ¶¶ 60-63).

29.    As to Sears Contract's negligence/gross negligence claims, it alleges that to the extent that it is found liable to Historic Charleston, such liability is the result of negligence, carelessness, and recklessness of the work of Hidalgo. As such, Sears Contract alleges that as a direct and proximate result of such negligence, carelessness, and recklessness, it has and will continue to incur damages, including but not limited to any monies it is adjudged to owe Historic Charleston or which it pays Historic Charleston in settlement of its claims, attorneys' fees and costs, expenses, and any other payment or expenses incurred as a result of defending this action. (Ex. B, ¶¶ 65-67).

30.    *THE SEARS/HIDALGO SUBCONTRACT:* Hidalgo entered into a subcontract agreement with Sears, dated December 13, 2016 (the "Subcontract") A true and correct copy is attached as Exhibit "C."

31.    The Subcontract provides that Hidalgo is to furnish all labor, materials, equipment, tools, scaffolding, hoisting, transportation, supervision, coordination, safety, training, PPE, samples, shop drawings, and storage and to obtain all necessary permits and pay all associated taxes necessary and required to perform and complete all interior walls, ceilings and soffits drywall hanging and finishing (including corner beads), batt insulation, sound caulking and fire caulking. Ex. C.

32.    *HIDALGO'S SCOPE OF WORK:* On information and belief, Hidalgo had performed insulation installation, drywall installation, installation of ceiling grids, and some metal stud framing.

33.    On information and belief, in addition to the work identified in paragraph 32 above, Hidalgo is also alleged to have completed the work of another subcontractor, N&B Drywall, which included metal stud framing and exterior insulation and rigid insulation.

34.    On information and belief, Historic Charleston's experts attribute at least some of its damages to the alleged improper installation of the metal stud framing, exterior insulation and rigid insulation.

35.    Other than drywall installation, none of the work performed by Hidalgo was included in its Classification Description.

36.     On information and belief, Hidalgo completed or abandoned its work no later than May 2017.

37.     On information and belief, Sears terminated Hidalgo from the Historic Charleston Project on June 26, 2017, indicating that Hidalgo had not been present and working "in at least 3 weeks." Sears also contended that Hidalgo failed to complete the exterior canopy and elevator-front work.

38.     *THE POLICIES*:    Atain issued three successive Commercial General Liability ("CGL") insurance policies to Hidalgo that are relevant to the Historic Charleston Lawsuit: Policy No. CIP222652, effective March 5, 2016 through March 5, 2017 (the "2016-17 Policy"); Policy No. CIP311158, effective March 5, 2017 through March 5, 2018 (the "2017-18 Policy''), and Policy No. CIP311614, effective March 3, 2018 until November 13, 2018, when it was canceled at Hidalgo's request (the "2018-19 Policy") (collectively, the "Policies"). True and correct copies of the Policies are attached as Exhibits D-F, respectively.

39.     The Policies each provide limits of liability for covered claims of $1,000,000 per occurrence, with a general aggregate limit of $2,000,000. The Policies include a $1,000 per claim deductible. (Exs. D-F).

40.     The Policies list Hidalgo's Business Description as "Drywall Installation." The Classification Description of the 2016-17 Policy and the 2018-19

Policy is listed as "Drywall Wallboard Installation." (Exs. D, F, Supp. Declarations).

41.     The 2017-18 Policy also lists "Drywall Wallboard Installation" as its Classification Description, (Ex. E, Supp. Declarations), but an endorsement, effective June 22, 2017, added "Metal Erection," "Ceiling Or Wall Installation," and "Insulation" to the Classification Description. (Ex. E. General Change Endorsement #3).

42.     The Policies' main insuring agreement is provided in Form CG 00 01 04 13, which provides, in relevant part as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

> **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .
>
> **b.**     This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1)     The "bodily injury" or "property damage" is

caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period . . .

**2.    Exclusions**

This insurance does not apply to …

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. …

**j.    Damage to Property**

"Property damage" to:

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. …

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage to Your Work**

"Property Damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use. …

**n.    Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product',
(2)    "Your work"; or

- 15 -

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. …

## SECTION V-DEFINITIONS …

**8.**    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.    You have failed to fulfill the terms of a contract or agreement;
       if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement. …

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

**16.**    "Products-completed operations hazard":

   **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product"
       or "your work"...

**17.**    "Property Damage" means:

   **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use

shall be deemed to occur at the time of the physical injury that caused it; or

**b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

21.    "Your product" means:

**a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1)    You;
(2)    Others trading under your name; or
(3)    A person or organization whose business or assets you have
acquired . . .

22.    "Your work" means:

**a.**    Means:

(1)    Work or operations performed by you or on your behalf; and

(2)    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

(1)    Warranties or representations made at any time with respect
to the fitness, quality, durability, performance or use of "your work"; and

(2)    The providing of or failure to provide warnings or instructions. …

(Ex. D-F, Form No. CG 00 01 04 13).

43.     The Policies include Form No AF335 07/2012, titled "Classification Limitation Endorsement," which provides, in pertinent part:

> Coverage under this policy is specifically limited to, and applies only to those classifications as described under the applicable Coverage Part or Schedule designated in the Declarations Page of this policy.
>
> This policy excludes coverage for any operation not specifically listed in the Coverage Part, Schedule or Declarations Page of this policy.

(Ex. D-F, Form No. Form No. AF335 07/2012).

44.     The Policies also include Form No. AF-3380 (07/ 12), titled "Fraud And Misrepresentation Endorsement," which provides, in pertinent part:

> This policy was issued based on the information supplied on an application and other correspondence, including your claims or loss history. This information is attached to and considered to be part of this policy.
>
> You should review this information carefully because the truth of this information was of paramount importance in influencing our decision to issue this policy.
>
> You, for all the insureds under this policy, do warrant the truth of such information to the best of your and their knowledge at the inception date of this policy.
>
> If such information is false or misleading, it may cause denial of coverage or voiding of the policy. …

45.     The Policy also includes Form No. CG 2167 12 04, titled, "Fungi or Bacteria Exclusion," which provides, in relevant part:

**A.**    The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

**2.    Exclusions**

This insurance does not apply to:

Fungi Or Bacteria

a.    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption. …

**C.**    The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. …

(Ex. D-F, Form No. CG 2167 12 04).

- 19 -

46.     The Policies include Form No. CG 2010 04 13, titled "Additional Insured-Owners, Lessees Or Contractors – Scheduled Person Or Organization," which provides in pertinent part:

A.     **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.     Your acts or omissions; or

2.     The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B.     With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1.     All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2.     That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project. …

(Exs. D-F, Form No. CG 2010 04 13).

47.    Sears is listed in the Schedule of Additional Insureds on Form No. CG 2010 04 13, but there are no listed Locations Of Covered Operations. (Exs. D-F, Form No. CG 2010 04 13).

48.    The Policies also include Form No CG 2037 04 13, titled "Additional Insured – Owners, Lessees Or Contractors – Completed Operations," which provides, in pertinent part:

A.    Section II - Who Is An Insured is amended to include as an Additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B.    With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    1.      Required by the contract or agreement; or

    2.      Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations. …

(Exs. E, Form No. CG 2037 04 13).

49.    Sears is not listed in the Schedule of Additional Insureds under Form No. CG 2037 04 13 on any of the Policies. (Exs. D-F, Form No. CG 2037 04 13).

50.    The Policies also include a "Combined Coverage And Exclusions Endorsement" under various forms, which modifies the Policies' "Other Insurance" Conditions as follows:

## XII.    AMENDMENT OF OTHER INSURANCE ENDORSEMENT

It is agreed that **Section IV — Commercial General Liability Conditions**, Paragraph 4. Is replaced in its entirety with the following:

This insurance is excess over any other insurance whether primary, excess, contingent or on any other basis that is available to any insured. You are required to give notice of claim to all "potential insurers" within thirty days of giving notice of claim to us.

We have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to your rights against all those other insurers.

We will pay only our share of the amount of loss, if any, that exceeds the sum of:

The total amount that all such other insurance would pay for the loss in absence of this insurance; and The total of all deductible and self-insurance amounts under all such insurance.

"Potential Insurers" means all insurance companies who may be obligated to defend any insured as either a named insured or an additional insured. …

51.    Atain agreed to defend Hidalgo for Sears's cross-claim and Historic Charleston's claims in the Historic Charleston Lawsuit, under a reservation of rights, including but not limited to a reservation of rights to seek a declaratory judgment. Atain now seeks declaratory judgment as to whether it has any obligation to defend or indemnify Hidalgo in the Historic Charleston Lawsuit, including Sears's cross-claims.

## COUNT I – NO COVERAGE
## CLASSIFICATION LIMITATION ENDORSEMENT

52.    Atain incorporates paragraphs 1-51 as paragraph 52 of Count I.

53.    At all times while Hidalgo was alleged to have been working on the Historic Charleston Project, it was only classified under the Policies to perform drywall installation.

54.    It is alleged by Historic Charleston and Sears that Hidalgo performed work in addition to drywall installation that they allege caused or contributed to Historic Charleston's damages.

55.    Such alleged work, including but not limited to metal stud framing, ceiling installation, and insulation installation, was outside of the classification description and business description on the Policies.

56.    Furthermore, Hidalgo's work was completed or abandoned prior to the amendment of the 2017-18 Policy to add insulation in its Classification Description.

57.    Under the Policies' Classification Limitation Endorsement, there is no coverage for "property damage" arising out of the insured's work or operations that are outside of the Policies' Classification Description.

58.    Accordingly, there is no coverage for the Historic Charleston Lawsuit, including Sears's third-party complaint under the Policies' Classification Limitation Endorsement.

## COUNT II – NO COVERAGE
## FRAUD AND MISREPRESENTATON ENDORSEMENT/RECISSION

59.    Atain incorporates paragraphs 1-51 as paragraph 59 of Count II.

60.    At all times material, Hidalgo or its agents represented to Atain that Hidalgo was only performing drywall/wallboard installation in its applications.

61.    At the time these representations were made to Atain, Hidalgo knew or should have known such representations were false or inaccurate.

62.    At all times material, Hidalgo knew it was performing work other than drywall/wallboard installation and that it failed to disclose such work to Atain.

63.    At the time Hidalgo requested Atain add insulation as a classification, it had already performed such work on the Historic Charleston Project but had failed to disclose such work to Atain.

64.    Based on Hidalgo's misrepresentations there is no duty to defend or indemnify Hidalgo for the Historic Charleston Lawsuit, including the Sears Cross-Claim under the Policies' Fraud and Misrepresentation Endorsement.

65.    Alternatively, Atain is entitled to a rescission of the Policies because the misrepresentations concerning the scope of its work were material to Atain's decision to issue the Policies on their terms and for the premiums charged. Had Hidalgo or its agents properly disclosed its scope of work, Atain either would not have issued the Policies, would have issued the Policies under different terms, or would have charged a higher premium.

66.    Accordingly, Atain is alternatively entitled to rescission of the Policies.

## COUNT III – NO COVERAGE
## NO PROPERTY DAMAGE

67.    Atain incorporates its allegations in paragraphs 1-51 as paragraph 67 of Count III.

- 25 -

68.     There is no coverage under the Policies because the Historic Charleston Lawsuit seeks to recover the costs to repair or replace Hidalgo's own work, including the removal and replacement of other property to facilitate the repair or replacement of Hidalgo's work.

69.     The cost to repair or replace Hidalgo's work does not constitute "property damage" under the Policies. Additionally, the costs to remove and replace other parts of the subject property to effectuate the repair or replacement of Hidalgo's work does not constitute "property damage."

70.     There is no coverage for any alleged "property damage" that did not occur during any policy period.

71.     Alternatively, to the extent the Historic Charleston Lawsuit alleges any "property damage" as defined by the Policies and South Carolina law, Atain is only obligated to pay for its *pro rata* share of such damages based on its time on the risk.

72.     Accordingly, there is no coverage under the Policies, and consequently no duty to defend or indemnify Hidalgo. Alternatively, to the extent there is any covered "property damage," Atain's indemnity obligations are limited by its *pro rata* time on the risk.

## COUNT IV – NO COVERAGE
## BUSINESS RISK EXCLUSIONS

73.    Atain incorporates its allegations in paragraphs 1-51 as paragraph 73 of Count IV.

74.    There is no coverage for Sears's third-party claims under the Policies' Contractual Liability Exclusion (Coverage Part A.2.b.). To the extent Sears seeks damages for contractual or equitable indemnity or breach of contract, the Policies do not cover such claims.

75.    There is no coverage to the extent the Historic Charleston Lawsuit seeks damages for "property damage" to any real property on which Hidalgo or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

76.    There is also no coverage to the extent the Historic Charleston Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because Hidalgo's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

77.    There is no coverage to the extent that the Historic Charleston Lawsuit seeks damages to Hidalgo's product under Coverage Part A.2.(k) ("Your product" Exclusion).

- 27 -

78.     There is no coverage to the extent the Historic Charleston Lawsuit seeks damages to Hidalgo's work, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your work" Exclusion).

79.     There is no coverage to the extent that the Historic Charleston Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property" Exclusion).

80.     There is no coverage to the extent that the Historic Charleston Lawsuit seeks damages for any loss, cost or expense incurred by Hidalgo or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of Hidalgo's product, Hidalgo's work, or any "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

## **COUNT V – SEARS IS NOT AN INSURED**

81.     Atain incorporates paragraphs 1-51 as paragraph 81 of Count V.

82.     Sears does not qualify as an additional insured under the Policies because the alleged "property damage" only occurred after Hidalgo's work on the Historic Charleston Project was completed.

83.     Sears does not qualify as an additional insured under the Policies because the Historic Charleston Project is not listed as a Scheduled Location under Form No. CG 2010 04 13.

84.     Sears is not entitled to additional insured coverage because Form No. CG 2010 04 13 under the Policies excludes coverage for "property damage" occurring after Hidalgo's work on the Historic Charleston Project was completed.

85.     Sears does not qualify as an additional insured under Form No. CG 2037 04 13 of the Policies because Sears is not listed on the Schedule of Additional Insureds.

86.     Sears does not qualify as an additional insured under Form No. 2037 04 13 of the Policies because the Historic Charleston Project is not listed as a Scheduled Location.

87.     Sears is not otherwise covered under the Policies due to the Policies' terms, conditions, exclusions and endorsements otherwise identified in this Complaint.

## COUNT VI – NO COVERAGE
## FUNGI OR BACTERIA EXCLUSION

88.     Atain incorporates its allegations in paragraphs 1-51 as paragraph 88 of Count VI.

89.     To the extent Historic Charleston seeks damages due to any exposure to, development of, or growth of mold, mildew, or bacteria inside of subject property, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

90.     To the extent that Historic Charleston seeks damages due to any costs or expenses associated with the removal, repair, remediation, monitoring, or testing for mold, mildew, or bacteria, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

## COUNT VII – NO COVERAGE
## INTEGRATED POLICY PROVISIONS

91.     Atain incorporates its allegations in paragraphs 1-51 as paragraph 91 of Count VII.

92.     Atain fully incorporates by reference each and every term, condition, exclusion and endorsement contained within Exhibits D-F.

93.     To the extent any additional term, condition, exclusion or endorsement within the Policies applies to the allegations, facts, or circumstances as discovered in this action or the Historic Charleston Lawsuit and the Sears third-party complaint, Atain seeks a declaration to the extent such terms, conditions, exclusions or endorsements eliminate or reduce the available coverage for the Historic Charleston Lawsuit.

## REQUESTED RELIEF

**WHEREFORE**, Atain respectfully requests this Court:

a.    Take jurisdiction and adjudicate the rights of the parties under the Policies;

b.    Find that Atain has no obligation to defend or indemnify Hidalgo for the Historic Charleston Lawsuit, including Sears' cross-claims, under the Policies; and

c.    Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

COOPER TIERNEY

/s/ Lindsey W. Cooper
Lindsey W. Cooper Jr. (Fed. ID No. 9909)
M. Linsay Boyce (Fed. ID No. 11952)
Dustin J. Pitts (Fed. ID No. 13511)
36 Broad Street
Charleston, SC  29401
P: 843-375-6622
F: 843-375-6623
E-mail: lwc@coopertierney.com
          linsay@coopertierney.com
          djp@coopertierney.com

*Attorneys for Atain Spec. Ins. Co.*

Dated: August 22, 2024
Charleston, South Carolina